UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,
vs.                                    Case: 8:14-CR-00463-JSM-AEP

EVER SOLIS CIFUENTES,
    Defendant,
_____/

## SENTENCING MEMORANDUM

Comes now the defendant, Ever Solis Cifuentes (hereinafter also referred to as "Solis" or "Defendant"), by and through Undersigned Counsel, and files this Sentencing Memorandum. Mr. Solis hereby prays that this Honorable Court will consider the following facts in establishing a reasonable sentence for him.

**I. THE DEFENDANT DESERVES A MINOR ROLE SENTENCE REDUCTION**

Under USSG 3B1.2, the defense request a 4 level decrease in this sentence because Mr. Solis was a minor participant in the criminal activity. The *Commentary* at 3(A) for 3B1.2 notes that a downward adjustment is applicable for those substantiality less culpable that the average participant. The other crewmembers arrested with Mr. Solis were seasoned mariners actively involved in every aspect of the transportation of the cocaine. Mr. Solis' only function was to count the bales loaded and to help prepare food for the real sailors. The *Commentary* adds that the departure is determined by a fact-based

1

examination based on the totality of the circumstances of the particular case. Factoring in Mr. Solis' youth, lack of skills, limited involvement, and mental capacity, he deserves a minor role reduction of four levels.

**II. THE DEFENSE REQUESTS A TWO LEVEL SAFETY VALVE REDUCTION**

The Defendant is safety - valve eligible with a 4A1.3 criminal history category of 1. Mr. Solis deserves a USSG 5C1.2 reduction since he has truthfully and completely debriefed with the government, he neither used violence nor threats of violence, nor possessed a firearm in the instant offense, and he was not an organizer, leader, manager, or supervisor of others in the offense. He has also cooperated extensively with the government in its investigations of crimes.

Indeed, pursuant to 18 U.S.C. § 3553 (a)(1), because the Defendant has truthfully debriefed and extensively cooperated with the government, waived his valuable appellate rights, and because he has minor criminal history and is not dangerous, this Court should consider all of the sections below pertaining to "...history and characteristics of the defendant..." when fashioning a reasonable sentence for him.

The defendant complies with all of the safety valve requirements with one exception. His plea included the following statutes under Count One: Title 21 USC 960(b)(1)(B)(ii), Title 46 USC 70503(a)(1), and Title 46 USC 70506(a) and (b). On its face, 18 USC 3553(f), the safety valve section applies to Title 21 USC 960 but not to Title 46 violations. The statutes charged against Mr. Solis are listed below. A comparison shows little difference in the charges. Mr. Solis deserves a safety valve reduction because

2

he meets the five requirements and based on the same conduct resulting in the below three charges. The Title 21 offenses almost mirror the Title 46 offenses.

**Title 21 USC 960(b)(1)(B)(ii)** includes the following:

(a) Unlawful acts
Any person who—
**(1)** contrary to section 952, 953, or 957 of this title, knowingly or intentionally imports or exports a controlled substance,
**(2)** contrary to section 955 of this title, knowingly or intentionally brings or possesses on board a vessel, aircraft, or vehicle a controlled substance, or
**(3)** contrary to section 959 of this title, manufactures, possesses with intent to distribute, or distributes a controlled substance,
shall be punished as provided in subsection (b) of this section.
(b) Penalties
**(1)** In the case of a violation of subsection (a) of this section involving—
**(A)** 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;
**(B)** 5 kilograms or more of a mixture or substance containing a detectable amount of—
**(i)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;
**(ii)** cocaine, its salts, optical and geometric isomers, and salts or isomers.

**Title 46 USC 70503(a)(1)** includes the following:
(a) Prohibitions**.—** An individual may not knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board—
**(1)** a vessel of the United States or a vessel subject to the jurisdiction of the United States

**Title 46 USC 70506(a) and (b)** includes the following:

(a) Violations**.—** A person violating section 70503 of this title shall be punished as provided in section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 960). However, if the offense is a second or subsequent offense as provided in section 1012(b) of that Act (21 U.S.C. 962 (b)), the person shall be punished as provided in section 1012 of that Act (21 U.S.C. 962).
(b) Attempts and Conspiracies.— A person attempting or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503.

Charles Doyle wrote the following for the Congressional Research Service in 2013: "Congress has instructed the United States Sentencing Commission to report on the operation of federal mandatory minimum sentencing provisions. A majority of the federal judges responding to a Commission survey agree that the two exceptions (Substantial Assistance and Safety Valve) should be expanded. A number of Commission hearing witnesses have also urged that the provisions be amended. The Commission's report suggested that Congress consider expanding the safety valve to cover other offenses and to reach offenders with a slightly more extensive criminal record." https://www.hsdl.org/?%20view&did=746019

In *U.S. v. Guillermo Espino-Macree*, No. 09-12841, 379 Fed. Appx. 971 (11th Cir. May 24, 2010), the defendant pleaded guilty to 21 USC 960(b)(1)(B)(ii) and 46 USC 70503(a),(b), and (2). The District Court granted safety-valve resulting in no constraint with the statutory minimum. Also, in *U.S. v. Sinisterra*, 237 Fed. Appx. 467 (11th Cir. 2007), the defendant pleaded guilty to 21 USC 960(b)(1)(B)(ii) and 46 USC 1903(a) and (g). He was enhanced for his role as a captain but was awarded safety-valve and a two point reduction under 5C1.2. Similar safety-valve reductions were handed defendants in *U.S. v. Candelo*, No. 09-15733 (11th Cir. July 1, 2010) and *U.S. v. Olave-Valencia*, 371 F. Supp. 2d. 1224 (S.D. Calif 2005) In Olave, the court noted:

"[t]o interpret [46 U.S.C. § 70503] . . . as incorporating only § 960's mandatory minimums and not 960's safety valve relief pursuant to § 3553(f), would unfairly create a one-way avenue whereby a defendant's penalty could only be increased but never reduced. Furthermore, there exists no statutory language or legislative history to support the idea that § 3553(f) was intended to create a historic change where, for

4

the first time, certain § 955 (United States waters) offenders would be subject to a more lenient penalty than [§ 70503] (high seas) offenders with similar characteristics. Congress intended for § 955 and [§ 70503] convictions to be penalized the same under § 960 which is expressly listed in the safety valve provisions. This Court will not draw a distinction where one does not exist."

To the contrary, In *U.S. v. Pertuz-Pertuz*, 679 F.3d 1327 (11th Cir. 2012), the court decided that the defendant did not deserve a safety-valve reduction due to his plea including a Title 46 charge among other charges.

The defense requests a safety valve sentence reduction based on the following summarizing the above:

1. Compliance with 18 USC 3553(a)(1) and USSG 5C1.2 requirements.

2. Similarity of Title 21 and Title 46 offenses in their elements.

3. Congressional and Judicial expansion considered.

4. Numerous past cases allowing safety-valve with Title 46 charges.

5. Apparent split between circuits on the subject.

III. **CONSIDERATION OF COOPERATION WITH OR WITHOUT 5K1.1 MOTION**

Mr. Solis was debriefed three times by federal agents and provided truthful information each time. His testimony was specific and constantly the same. Mr. Solis provided detailed, substantial assistance/information in the following areas:

1. Identification of superiors.

2. Details of meetings.

3. Discussions regarding monetary transfers.

5

4. Activity at speedboat launch site, at sea, and facts surrounding the seizure and arrest.

5. Role of other conspirators.

After *Booker* and *Rita v. U.S.*, 551 US 338 (2007), it can be argued that a defendant's cooperation reflects a reduced likelihood of recidivism and is a beneficial part of his history and character supporting a non-guideline sentence under USSG 3553(a)(2)(C) even where the government does not file a 5K1 motion. In *United States v. Fernandez*, 443 F.3d 19 (2d Cir. 2006), the court held that a judge must consider the history and characteristics of the defendant and should take under advisement the contention that a defendant made efforts to cooperate, even if those efforts did not yield a government motion for a departure. Supporting cases include:

*United States v. Murray*, 2005 WL 1200185 (SDNY May 20, 2005)

*United States v. Hubbard*, 369 F. Supp. 2d 146 (D. Mass 2005).

## Completed vs. Attempted Cooperation

Attempted cooperation by Mr. Solis deserves consideration, especially in light of the cases listed below:

United States vs. Fernandez, 443 F.3d 19 (2d Cir. 2006). The court held that considering a defendant's history and characteristics, the court should consider contention that the defendant made efforts to cooperate, even if those efforts did not yield a sufficient government motion for departure.

6

United States vs. Doe, 213 F. App'x 660 (10th Cir 1997). The case was remanded because the sentence would be unreasonable if the court had not taken into consideration defendant's efforts to cooperate.

United States vs. Jaber, 362 F. Supp. 2d 365 (D. Mass. 2005). In a drug case, a downward departure was granted in part because the defendant tried to cooperate repeatedly but had little to offer. The court noted, "There is something troubling about the extent to which differences in sentencing were driven not by the difference in crime, but by the happenstance of the way the government indicted, the jurisdiction of the indictment, and who ran to cooperate first."

## IV. 18 USC 3553 SENTENCE REDUCTION CONSIDERATIONS

**18 USC 3553 Factors Generally**

In the case of Pepper vs. United States 131 S.Ct. 1229 (2011), the United States Supreme Court emphasized the need for individualized sentencing based not only on the crime but on the defendant. In United States vs. Booker, 543 U.S. 220 (2005), the Supreme Court held that the sentencing guidelines are *advisory* only, not mandatory.

The other factors set forth in 18 U.S.C. § 3553 (a) must also be considered in fashioning the appropriate sentence. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B)

to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. Booker, 125 S.Ct. at 764; see also Gall vs. United States, 552 U.S. 38 (2007); Kimbrough vs. United States, 552 U.S. 85 (2007).

After Booker, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for downward departure as long as the resulting sentence is reasonable. United States vs. Williams, 435 F.3d 1350 (11th Cir. 2006)

In rendering the Sentencing Guidelines advisory, Booker established a new independent limit on sentences that may be imposed. The primary sentencing mandate of §3553(a) states that a court must impose a minimally sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, and rehabilitation as set forth in the beginning sentence where it states that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

"Just because a consideration was improper under the mandatory Guidelines regime does not mean that it is necessarily improper under the advisory Guidelines regime." United States vs. Garcia, 497 F.3d 964, 971-72 (9th Cir. 2007). Therefore, a sentencing judge could well conclude that a . . . discouraged factor did not quite justify a departure from the guidelines . . . but might justify a somewhat shorter sentence under a reasonableness standard. United States vs. Thurston 456 F.3d 211 (1st Cir. 2006).

*Extreme Remorse*

Generally, any defendant that appears in federal court and pleads guilty expresses remorse for their offense. In an everyday occurrence, federal courts throughout the United States listen to defendants allocute before the imposition of sentence seeking mercy. On occasion, however, the remorse shown in advance of sentencing can justify a lesser sentence where the remorse reaches a high level.

For example, in United States vs. Stall 581 F.3d 276 (6th Cir. 2009), which was a child pornography case where the guideline range was 57-71 months, the district court's sentence of 1 day in jail, 10 years supervised release, and one year house arrest, was not found not to be unreasonable on appeal. The appellate court found, in part, because of defendant's exceptional expression of remorse at the time of his arrest and thereafter, immediate cooperation with the investigation, commitment to counseling, and demonstrated promise for rehabilitation.

The theory behind this reduction was best expressed in <u>United States vs. Milne</u>, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005), where the district judge explained that the three level reduction is ordinarily and routinely granted to defendants who timely plead guilty but the guidelines do not otherwise account for greater expressions of remorse. The Sixth Circuit has analyzed the factors necessary for extreme remorse in fraud cases and they have sought to identify the "more worthy defendants". See <u>United States vs. Davis</u>, 458 F.3d 491 (6th Cir. 2006), In order to determine who is "more worthy" that circuit developed criteria to weed out the less worthy. In this fraud context, the majority stated that to identify "more worthy defendants" deserving extreme variances, the criteria included "those [defendants] who accepted responsibility for the crime and showed remorse for committing it; those who used the time between the commission of the crime and sentencing to engage in other acts demonstrating rehabilitation; and, with respect to elderly defendants, those who had become infirm in the intervening years." See <u>Davis</u>, supra at 499. See also <u>United States vs. Camiscione</u>, 207 Fed. Appx. 631 (6th Cir. 2006).

While this defendant cannot erase the crimes that he stands convicted of, his extreme remorse and actions since his arrest certainly qualify him for the variance based on extreme remorse. He has reached out to all known associates in Colombia trying to get them to help the DEA. He worked very hard to provide accurate information during his multiple interviews. More importantly, PhD Valerie McClain's report addresses Solis' remorse and its effect on him.

10

*Early Departure of Parents/Lack of Guidance as a Youth*

The death of parents or abandonment can qualify as a downward variance for a defendant. Mr. Solis' father was murdered and his mother abandoned him and his brothers and sisters when he was 12 years old. Mr. Solis had to quit school and go to work to feed his siblings. In *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006), upheld a reduction to 120 months from a Guideline sentence of 188-235 based in part on the fact that the defendant's father died when he was 9 years old and his mother died soon thereafter. In *United States v. Castillo*, 2007 WL 582749 (SDNY 2007), the court reduced a guideline range of 135-168 to 111 months because the defendant experienced depression at the loss of his parents at a young age resulting in family financial and emotional upheaval.

*Booker* and its companion cases free the district courts to consider lack of guidance for youths and circumstances indicating a disadvantaged upbringing. In *United States v. Ruiz*, 2009 WL 636543 (SDNY March 11, 2009), the court reduced the defendant's 140-175 range to 96 months due to the defendant's difficult childhood, abusive mother, and absent father. The court in *United States v. Patzer*, 548 F. Supp. 2d 612 (N.D.) Ill. 2008) imposed a sentence of 13 years instead of the 346-411 month range because of the defendant's difficult childhood and mental health problems.

*Diminished Mental Capacity*

Related to unique familial challenges faced by Mr. Solis is the significant intellectual challenge he faces on a daily basis, according to the psychological report, ATTACHMENT A. This intellectual disability is detailed in the extensive report of Dr. McClain. While not sufficient to establish a scienter-based defense in this case, Mr. Solis's

11

diminished mental capacity sheds light on the dynamics of his poor decision-making and judgment as a bale-counter/cook in the drug operation. This diminished mental capacity should be taken into account by the Court in fashioning the appropriate sentence in this case.

USSG §5K2.13(p.s.) encourages a downward departure if (1) the defendant committed the offense while suffering from "a significantly reduced mental capacity" and this reduced capacity "contributed substantially to the commission of the crime." The policy statement provides that a court may not depart if the reduced capacity was "caused by the voluntary use of drugs," the offense involved "actual violence or a serious threat of violence," the defendant's criminal history indicates a need for incarceration to protect the public, or the offense of conviction is for certain sex and child porn crimes. These limitations are advisory only after *Booker*.

§5K2.13 "applies both to mental defects and emotional disorders . . . the focus is on mental capacity not the cause – organic, behavioral, or both"); ***U.S. v. Cockett***, 330 F.3d 706 (6th Cir. 2003) (diminished capacity departure from 21 months to probation affirmed in income tax fraud case because of defendant' depressive disorder though jury necessarily found mental element of intent and no causal link existed between disorder and the crime); ***U.S. v. Sadolsky***, 234 F.3d 938 (6th Cir. 2000) (2-level departure under §5K2.13 affirmed in computer fraud case based on defendant's compulsive gambling disorder, where disorder was a likely cause of criminal behavior given that defendant had "maxed out" his own credit line before resorting to fraud to pay his gambling debts; no direct causal link required between the diminished capacity and the crime)*; **U.S. v. Grinbergs**, 470 F.3d 758, 761 (8th

Cir. 2006) (finding district court could still consider defendant's mental capacity insofar as it was relevant to the § 3553(a) factors though diminished capacity departure under § 5K2.13 unavailable to defendant convicted of possession of child pornography); ***U.S. v. Ruklick***, 919 F.2d 95, 97, 99 (8th Cir. 1990) (downward departure justified when defendant suffered from schizophrenic affective disorder that predated drug abuse and impaired his judgment)*; **U.S. v. Menyweather**,* 431 F.3d 692, 698 (9th Cir. 2005) (in embezzlement case, finding no abuse of discretion in district court's downward departure of 8 levels to probation under §5K2.13 in part due to defendant's post-traumatic stress disorder (PTSD) where psychologist's testimony was not rebutted); ***U.S. v. Ruiz,*** 2009 WL 636543 (S.D.N.Y. March 11, 2009)(judge imposed 96 months rather than guideline range of 140-175 months for crack offenses in part due to defendant's borderline personality disorder); ***U.S. v. Santa***, 2008 WL 2065560 (E.D. N.Y. May 14, 2008) (8 level downward departure granted for significantly reduced mental capacity of 36 year old defendant with IQ of 58, and 120 months imposed for trafficking offenses rather than guideline range of 262 -327 months where the defendant's behavior was causally linked to his mental condition); ***U.S. v. Castellanos****,* 2008 WL 5423858 (D.Neb.2008)(finding that defendant's limited mental capacity combined with help she provided to law enforcement officers, and fact that she had participated in the drug conspiracy for a relative short period of time and her co-defendants had received lower sentences, merited sentence of 180 months for participation in drug conspiracy, despite guidelines recommendation of 360 months to life.)*;* ***U.S. v. McNeil***, 2007 WL 2318458 (D. Neb. Aug. 9, 2007) (District court departed downward based on diminished capacity because the defendant actions represented that he did not

13

understand why his actions were wrong *U.S. v. Tanasi*, 2003 WL 328303 (S.D.N.Y. 2003) (unpub.) (defendant convicted of possessing and sending child porn by computer to undercover agent posing as 13 year old entitled to departure from 33-41 month advisory range to 9 month sentence based on diminished capacity given his "obsessive and compulsive behavior," inability to control his conduct, and lack of evidence that he was sexual predator or had sexual contact with child) *U.S. v. Bennett*, 9 F. Supp. 2d 513 (E.D.Pa. 1998) (departure to 141 months from 232 warranted as "...defendant's cognitive faculties or volition, or both, appear to have been subject to some form of extraordinary distortion and, perhaps, significantly reduced capacity"); *U.S. v. Herbert*, 902 F. Supp. 827 (N.D. Ill.1995) (departure under §5K2.13 for defendant convicted of embezzlement who suffered from active depressive illness, mixed personality state, limited coping skills, poor judgment, and psychiatrist opined behavior and thought patterns were influenced by impaired mental condition).

## Deportation Involves Significant Additional Incarceration

After release from the Bureau of Prisons, Mr. Solis will be transported to an Immigration and Customs facility for the purpose of deportation to Colombia. On or about the third week of May, 2015, agents with FBI, DEA, and HSI (Homeland Security) advised that the standard amount of time to accomplish a complete deportation takes approximately 90 days. The defense request that the defendant receive credit for the probable 90 days of additional incarceration pending deportation.

**Prison has Greater Significance for First Time Offenders**

Mr. Solis has never been arrested in his life prior to this case. He is a young, twenty two years old male with mental issues. Case law supports a defense request for a downward variance due to his first offender status. In *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006), the appellate court affirmed the district court's variance from 108 months to 78 months justifying the judges' finding that prison would mean more to this defendant than one who had been imprisoned before. This finding resonates with the goal of "just punishment" in 18 USC 3553(a)(2)(A) and "adequate deterrence" in 3553(a)(2)(B).

The following cases included downward variances for first time offenders:

*United States v. Weidner*, 209 F. Appx 826 (10th Cir. 2006), 78-97 months to 60 months.

*United States v. Jewell*, 2009 WL 1010877 (E.D. Ark. 4/15/09), 60 months to 30 months.

*United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006), 10-14 months to 2 months.

**Defendant Vulnerability to Victimization in Prison**

In a 2013 federal prison population survey by the Bureau of Justice Statistics, the survey determined that the violent victimization rate was 20.4% to 26.3% per 1,000 surveyed. www.bjs.gov/index.cfm?ty=dcdetail&iid=245. Additionally, in a separate 2012 Bureau of Justice Statistics survey found that federal inmates with mental health problems reported higher rates of sexual victimization.
www.bjs.gov/index.cfm?ty=dcdetail&iid=4923.

Mr. Solis is an unsophisticated, twenty year old male with no prison experience and he does not speak English. He is slight of build with significant mental health problems and unable to read or write in any language. It is probable that Mr. Solis will not function well in the federal prison population and suffer significantly more than the average first time offender. The following cases represent numerous federal judges that granted downward variances for offenders facing potential victimization in federal prison:

*United States v. Gonzalez*, 945 F.2d 525 (2d Cir. 1991).

*United States v. Long*, 977 f.2d 1264 (8th Cir. 1992).

*United States v. Parish*, 308 F.3d 1025 (9th Cir. 2002).

*United States v. Garcia-Salas*, 260 Fed. App'x 27 (10th Cir. 2007).

*United States v. Ruff*, 998 F. Supp. 1351 (M.D. Ala. 1998).

**V. THE DEFENSE CONTENDS SOLIS SHOULD BE ELIGIBLE FOR A TWO POINT REDUCTION OF SENTENCE UNDER 18 USC 3582 AND AMENDMENT 782**

18 USC 3582(c)(2) reads "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994 (o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553 (a) to the

extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

AMENDMENT: RETROACTIVITY OF AMENDMENT 782 reads "Reason for Amendment: This amendment expands the listing in §1B1.10(d) to implement the directive in 28 U.S.C. § 994(u) with respect to guideline amendments that may be considered for retroactive application. The Commission has determined that Amendment 782, subject to the limitation in new §1B1.10(e) delaying the effective date of sentence reduction orders until November 1, 2015, should be applied retroactively. Amendment 782 reduced by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties in §2D1.1, and made parallel changes to §2D1.11. Under the applicable standards set forth in the background commentary to §1B1.10, the Commission considers the following factors, among others: (1) the purpose of the amendment, (2) the magnitude of the change in the guideline range made by the amendment, and (3) the difficulty of applying the amendment retroactively. See §1B1.10, comment. (backg'd.). Applying those standards to Amendment 782, the Commission determined that, among other factors: The purposes of the amendment are to reflect the Commission's determination that setting the base offense levels above mandatory minimum penalties is no longer necessary and that a reduction would be an appropriate step toward alleviating the overcapacity of the federal prisons. See 28 U.S.C. § 994(g) (requiring the Commission to formulate guidelines to "minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons")."

17

The defendant should be eligible for this two point reduction because the reason for the Amendment was to alleviate prison overcrowding. The Drug Quantity Table for the Amendment has a ceiling of 450 kilos of cocaine. The U.S. Coast Guard retrieved 562 kilos of cocaine. It is doubtful that the Commission wanted to exclude defendants in Mr. Solis' minor role position and add to prison overcrowding.

The defense request a two point reduction based on Amendment 782.

## CONCLUSION

Pursuant to 18 U.S.C. § 3553(a), minor role, safety valve, and other listed variances, Mr. Solis should receive a reasonable sentence of 60 months or less. A sentence of 60 months is sufficient but not greater than necessary to accomplish the goals of federal sentencing.

DATED THIS 8th day of June, 2015

Respectfully submitted,

/s/ Kelly J. Thomas
Kelly J. Thomas
Counsel for the Defendant
11161 East S.R. 70
Suite 110, PMB 169
Lakewood Ranch, Fl 34202
Tele: (941) 266-7199
Email: Thomaslawoffice@mail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished by ECF to THE OFFICE OF THE ASSISTANT UNITED STATES ATTORNEY, this 8th day of June, 2015.

                                          Kelly J. Thomas
                                          Counsel for the Defendant
                                          11161 East S.R. 70
                                          Suite 110, PMB 169
                                          Lakewood Ranch, Fl 34202
                                          Tele: (941) 266-7199
                                          Email: Thomaslawoffice@mail.com